**TREEHOUSE LAW, LLP**
Benjamin Heikali (SBN 307466)
Ruhandy Glezakos (SBN 307473)
Joshua Nassir (SBN 318344)
Ammad Bajwa (SBN 358564)
3130 Wilshire Blvd., Suite 555
Santa Monica, CA 90403
Telephone: (310) 751-5948
bheikali@treehouselaw.com
rglezakos@treehouselaw.com
jnassir@treehouselaw.com
abajwa@treehouselaw.com

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

Yolanda Pitre, individually, and on behalf of all others similarly situated,

Plaintiff,

v.

Scientific Hair Research, LLC and Profectus Beauty, LLC,

Defendants.

CASE NO.:

**CLASS ACTION COMPLAINT**

**DEMAND FOR JURY TRIAL**

Plaintiff Yolanda Pitre ("Plaintiff"), individually, and on behalf of all others similarly situated, by and through her attorneys, brings this Class Action Complaint against Defendants Scientific Hair Research, LLC and Profectus Beauty, LLC ("Defendants"), based upon personal knowledge as to herself, and upon information, investigation and belief of her counsel.

**INTRODUCTION**

1. Defendants sell Keranique brand hair regrowth products claiming they are ***"THE ONLY FDA APPROVED TOPICAL SOLUTION FOR WOMEN'S HAIR REGROWTH."*** This promise is displayed prominently on the front label of each product. However, it is false and misleading.

2. Consumers reasonably believe "THE ONLY FDA APPROVED TOPICAL SOLUTION" means exactly what it says: that Keranique is the *only* topical women's hair regrowth solution on the market with FDA approval.

3. But this representation is a lie. Unbeknownst to consumers, the Keranique products are not the "ONLY" ones with FDA approval for women's hair regrowth. The FDA has granted formal approvals to numerous manufacturers to sell topical minoxidil solutions for women's hair regrowth. By claiming to be "THE ONLY" one, Defendants attempt to erase these lawful competitors from the market, all while charging a large premium for the Keranique products.

4. Indeed, Keranique sells for approximately $14.49 per ounce. Competing FDA-approved products often sell for as little as $4.97 per ounce—less than one-third the price for the same *exact* active ingredient at the same *exact* concentration with the same *exact* approval. Consumers are paying a premium for a lie.

5. Plaintiff and other consumers relied and continue to rely on Defendants' false promise of exclusivity. They paid for a product they believed was the unique and "ONLY" FDA-approved solution. Had they known the truth—that they could buy the same FDA-approved solutions for nearly a third of the price—they would not have purchased Keranique, would have paid significantly less for it, or would have

purchased cheaper competitor products. Accordingly, Plaintiff and Class members have been injured by Defendants' deceptive business practices.

6. This class action seeks to hold Defendants accountable for misleading consumers about the regulatory status and exclusivity of their Keranique products, and to recover the money consumers lost as a result.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction under 28 U.S.C. § 1332(d)(2), also known as the Class Action Fairness Act ("CAFA"). The amount in controversy exceeds $5,000,000, exclusive of interest and costs, and the matter is a class action in which one or more members of the proposed Classes are citizens of a state different from Defendants.

8. Defendants are both Limited Liability Companies ("LLC").

9. For purposes of CAFA, an "unincorporated association shall be deemed to be a citizen of the State where it has its principal place of business and the State under whose laws it is organized." 28 U.S.C. § 1332(d)(10).

10. "The Ninth Circuit has not explicitly addressed whether an LLC is an 'unincorporated association' under CAFA, but most courts that have considered the issue have concluded that 28 U.S.C. § 1332(d)(10) applies to all types of non-corporate business entities, including LLCs." *Johnson v. Kadiant LLC*, No. 2:24-CV-01372-DC-CKD, 2024 WL 4616148, at *3 (E.D. Cal. Oct. 30, 2024); *Hurt v. SH Grp. Hotels & Residence U.S. LLC*, No. 2:24-CV-08840 MWC (ASX), 2024 WL 5244725, at *2 (C.D. Cal. Dec. 30, 2024).

11. Defendant Scientific Hair Research, LLC is an unincorporated association under CAFA deemed to be a citizen of California, both as the state where it was organized and as the state where it has its principal place of business.

12. Defendant Profectus Beauty, LLC is an unincorporated association under CAFA deemed to be a citizen of Delaware, where it was organized, and Florida, where it has its principal place of business.

13. Plaintiff is a citizen of California. Moreover, at least some members of the proposed Classes are citizens of states different than Defendants. As such, minimal diversity under CAFA is met.

14. The Court has general personal jurisdiction over Defendant Scientific Hair Research, LLC because it is organized under California law and maintains its principal place of business in California.

15. The Court also has personal jurisdiction over Defendants because Defendants conduct substantial and continuous business in California, purposefully avail themselves of the California market by marketing and selling large quantities of their products, including the products at issue, to consumers within the state, and the claims asserted herein arise from Defendants' contacts with California.

16. Venue is proper in this judicial District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims at issue in this case occurred in this District. Specifically, Plaintiff resides in this District and she purchased one of the Products at issue in this case in this District during the statute of limitations period.

## PLAINTIFF

17. Plaintiff Yolanda Pitre is a citizen of California and currently resides in San Mateo, California. In or around early 2025, Plaintiff purchased Defendants' Keranique Women's 2% Minoxidil Solution from a CVS store in San Mateo, California. Before making this purchase, Plaintiff saw and relied upon the "THE ONLY FDA APPROVED TOPICAL SOLUTION FOR WOMEN'S HAIR REGROWTH" representation prominently displayed on the Product's front packaging. Based on this representation, Plaintiff reasonably believed that Keranique was the only FDA-approved topical solution for women's hair regrowth. Had Plaintiff known that Keranique is not the only FDA-approved topical solution for women's hair regrowth, she would not have purchased the Product, would have paid significantly less for it, or would have paid for a cheaper competitor product. Plaintiff

therefore suffered economic injury as a direct result of Defendants' misleading representations.

**DEFENDANTS**

18. Defendant Scientific Hair Research, LLC is a limited liability company organized under California law with its principal place of business located at 6080 Center Drive, Suite 600, Los Angeles, California 90045. In August 2024, Scientific Hair Research acquired Profectus Beauty. Since the acquisition, Defendant Scientific Hair Research, through its agents, is responsible for the production, manufacturing, labeling, marketing, distribution and sale of the Products to consumers and retail stores across the United States, including stores physically located in the State of California. Defendant Scientific Hair Research additionally markets and distributes the Products through e-commerce stores that ship to consumers throughout the State of California and the nation.

19. Defendant Profectus Beauty, LLC is a limited liability company with its principal place of business located at 1 N. Clematis St., 3rd Floor, West Palm Beach, Florida 33401. Defendant Profectus Beauty, LLC, through its agents, is responsible for the production, manufacturing, labeling, marketing, distribution and sale of the Products to consumers and retail stores across the United States, including stores physically located in the State of California. Defendant Profectus Beauty, LLC additionally markets and distributes the Products through e-commerce stores that ship to consumers throughout the State of California and the nation.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

## FACTUAL ALLEGATIONS

### I. The Products Claim To Be "The Only FDA Approved" Solution

20. Defendants manufacture, market, sell, and distribute a line of hair regrowth treatments under the brand name "Keranique" (collectively, the "Products").[1]

21. Defendants distinguish the Products through a bold promise displayed on the front of the Products' packaging: "***THE ONLY FDA APPROVED TOPICAL SOLUTION FOR WOMEN'S HAIR REGROWTH***."

22. A representative example of the front label is shown below.




23. The claim is absolute and unqualified. It appears in capital letters and is not modified by any asterisk, footnote, disclaimer, or fine print that limits or explains its meaning.

24. The claim appears uniformly across the Products and has appeared on the Products' packaging at all relevant times, including before and after Scientific Hair Research's acquisition of Profectus Beauty.

[1] The Products include Keranique: 1) Hair Regrowth Treatment for Women; 2) Hair Regrowth Sprayer for Women; 3) Color Boost Complete Hair Regrowth System; 4) Deep Hydration Complete Hair Regrowth System; 5) Damage Control Complete Hair Regrowth System; and 6) Volumizing Complete Hair Regrowth System.

## II. Reasonable Consumers Understand This Claim to Mean Keranique Is Uniquely FDA Approved

25. The claim "THE ONLY FDA APPROVED TOPICAL SOLUTION FOR WOMEN'S HAIR REGROWTH" communicates a clear, unambiguous message: that Keranique is the only topical solution on the market with FDA approval for women's hair regrowth.

26. This interpretation follows from the plain language of the claim. The phrase "The Only" modifies "Topical Solution," which refers to the product itself. Indeed, to a reasonable consumer standing in a store aisle, "Topical Solution" refers to the bottle in her hand. The claim thus communicates that this specific brand (Keranique) is "THE ONLY" one the FDA has approved for women's hair regrowth.

## III. The Claim Is False: Keranique Is Not "THE ONLY" FDA-Approved Solution

27. Defendants' claim that Keranique is "THE ONLY FDA APPROVED TOPICAL SOLUTION FOR WOMEN'S HAIR REGROWTH" is demonstrably false. Keranique is *not* the only FDA-approved topical solution for women's hair regrowth. It is merely one of *dozens* of products on the market that share the *same* FDA-approved status.

28. The active ingredient in the Products is minoxidil 2%. Minoxidil was originally approved by the FDA for hair regrowth under the brand name Rogaine.

29. Following the expiration of Rogaine's patent exclusivity, other manufacturers became eligible to seek FDA approval for their own minoxidil products. To obtain approval, manufacturers file Abbreviated New Drug Applications (ANDA) with the FDA.

30. An ANDA approval signifies that the FDA has reviewed and formally approved that manufacturer's drug product as safe, effective, and bioequivalent to the brand-name reference. A product holding an ANDA approval is an FDA-approved product.

31. Contrary to Defendants' claim of exclusivity, *numerous* other manufacturers hold FDA approvals for topical minoxidil 2% solutions for women's hair regrowth.

32. According to the FDA's Orange Book, the official database of approved drug products, multiple manufacturers currently hold valid, active FDA approvals for topical minoxidil 2% solution.[2] These FDA-approved manufacturers include, but are not limited to:

- Kenvue Brands (Appl. No. N019501)
- L Perrigo Co. (Appl. No. A075357)
- Taro Pharmaceutical Industries Ltd. (Appl. No. A218175)

33. These manufacturers' FDA-approved minoxidil 2% products are marketed and sold to consumers under various brand names, including:

- Women's Rogaine (the original FDA-approved brand).[3]
- Hers Women's Hair Regrowth Treatment[4]
- CVS Health Women's Minoxidil[5]
- Walgreens Hair Regrowth Treatment[6]
- Up&Up Women's Hair Regrowth Treatment (Target's brand)[7]
- Equate Women's Hair Regrowth Treatment (Walmart's brand)[8]

---

[2] https://www.accessdata.fda.gov/scripts/cder/ob/index.cfm

[3] https://www.cvs.com/shop/rogaine-women-s-2-minoxidil-solution-for-hair-regrowth-3-month-supply-prodid-101886

[4] https://www.cvs.com/shop/hers-2-minoxidil-solution-for-hair-regrowth-1-month-supply-prodid-468005

[5] https://www.cvs.com/shop/cvs-women-s-2-minoxidil-solution-for-hair-regrowth-prodid-1013599

[6] https://www.walgreens.com/store/c/walgreens-hair-regrowth-treatment-topical-solution-for-women-unscented/ID=prod6392392-product

[7] https://www.target.com/p/hair-regrowth-treatment-for-women-2-fl-oz-each-up-38-up-8482/-/A-10810381

[8] https://www.walmart.com/ip/Equate-Minoxidil-Topical-Solution-2-Percent-Hair-Regrowth-Treatment-For-Women-6-Fluid-ounce-US/856243185

- Amazon Basic Care Women's Minoxidil Solution[9]
- Bosley MD Women's Hair Regrowth[10]

*See examples below and on the following page.*
















[9] https://www.amazon.com/Basic-Care-Minoxidil-Solution-Treatment/dp/B07QGKPZXQ

[10] http://walmart.com/ip/Bosley-For-Women-Hair-Regrowth-Treatment-2x60ml-2oz/443937827?classType=REGULAR&adsRedirect=true







34. Defendants are taking a standard, widely available generic drug sold by numerous manufacturers under valid FDA approvals and falsely marketing it as a uniquely approved product.

35. By falsely claiming exclusivity, Defendants lead consumers to believe that competing products are unapproved, unsafe, or illegitimate, driving them to purchase Keranique at a premium.

**IV. Defendants' Deceptive Claim Has Allowed Them to Command A Price Premium For the Products**

36. Defendants' misleading "ONLY FDA APPROVED" claim allows the Products to command a substantial price premium over other FDA-approved minoxidil products for women's hair regrowth.

37. Consumers pay significantly more for Keranique than for equivalent FDA-approved alternatives. These products contain the *exact* same active ingredient at the same *exact* concentration and hold the same *exact* FDA approval.

38. At CVS, Keranique Women's 2% Minoxidil is sold for roughly $14.49 per ounce as of December 5, 2025.[11] By contrast, competing FDA-approved minoxidil products for women's hair regrowth are sold at significantly lower prices. *See chart below.*

| CVS STORE | | |
|---|---|---|
| **Product** | **Retail Price** | **Price Per Ounce** |
| **Keranique Women's 2% Minoxidil[12]** | **$28.99** | **$14.49 / oz** |
| CVS Women's 2% Minoxidil[13] | $23.49 | $11.74 / oz |
| Hers 2% Minoxidil[14] | $15.99 | $8.00 / oz |
| Rogaine 2% Minoxidil[15] | $55.99 | $9.33 / oz |

39. On Amazon.com, Keranique Women's 2% Minoxidil is sold for approximately $12.50 per ounce.[16] By contrast, competing FDA-approved minoxidil products are sold at significantly lower prices. *See chart on the following page.*

/ / /

/ / /

/ / /

/ / /

---

[11] https://www.cvs.com/shop/keranique-women-s-2-minoxidil-solution-for-hair-regrowth-1-month-supply-prodid-232240

[12] *Id.*

[13] https://www.cvs.com/shop/cvs-women-s-2-minoxidil-solution-for-hair-regrowth-prodid-1013599

[14] https://www.cvs.com/shop/hers-2-minoxidil-solution-for-hair-regrowth-1-month-supply-prodid-468005

[15] https://www.cvs.com/shop/rogaine-women-s-2-minoxidil-solution-for-hair-regrowth-3-month-supply-prodid-101886

[16] https://www.amazon.com/Keranique-Regrowth-Treatment-Extended-Sprayer/dp/B01JRR8QLG/ref

| AMAZON STORE | | |
|---|---|---|
| **Product** | **Retail Price** | **Price Per Ounce** |
| **Keranique Women's 2% Minoxidil[17]** | **$24.99** | **$12.50 / oz** |
| Amazon Basic Care 2% Minoxidil[18] | $29.82 | $4.97 / oz |
| Hers 2% Minoxidil[19] | $28.10 | $7.03 / oz |
| Rogaine 2% Minoxidil[20] | $52.83 | $8.81 / oz |

40. As shown above, Keranique commands a significant price premium over its competitors. At CVS, Keranique's price per ounce is:

- 23% higher than the CVS Health store brand;
- 81% higher the Hers brand; and
- 55% higher than the Rogaine brand, the original brand-name manufacturer.

41. On Amazon.com, Keranique's price per ounce is:

- 151% higher than Amazon Basic Care;
- 78% higher than Hers; and
- 42% higher than Rogaine.

42. The false "ONLY FDA APPROVED" representation enables Defendants to charge this premium. All of these products contain the *same* active ingredient (minoxidil) at the *same* concentration (2%). All are FDA-approved for the same use (women's hair regrowth). The products are functionally identical. The only

---

17 *Id.*

18 https://www.amazon.com/Basic-Care-Minoxidil-Solution-Treatment/dp/B07QGKPZXQ/

19 https://www.amazon.com/Regrowth-Treatment-Tropical-Minoxidil-Unscented/dp/B09KWJG6JQ?th=1

20 https://www.amazon.com/Rogaine-Minoxidil-Solution-Thinning-Treatment/dp/B00BMLOKHU

material difference is Defendants' false and misleading claim that Keranique is "THE ONLY" FDA-approved topical solution. This false claim drives consumers to choose Keranique over lower-priced, equally effective, equally FDA-approved alternatives.

43. Consumers pay this premium believing they are purchasing unique safety and regulatory status that competitors lack. Had consumers known the truth, they would not have paid this premium for Keranique.

### V. Plaintiff and Class Members Were Misled and Financially Injured by Defendants' False and Misleading Claims

44. Prior to selecting and paying for the Products they purchased, Plaintiff and other consumers saw the "THE ONLY FDA APPROVED TOPICAL SOLUTION FOR WOMEN'S HAIR REGROWTH" representation on the front label of the Products.

45. Plaintiff and other consumers understood this as a promise that Keranique was the sole FDA-approved topical solution for women's hair regrowth available on the market, and that competing products lacked FDA approval.

46. Plaintiff and other consumers relied on this representation when choosing to purchase the Products over other alternatives. The representation was material to their purchasing decision.

47. Had Plaintiff and other consumers known the truth—that Keranique is not "THE ONLY" FDA-approved topical solution for women's hair regrowth and that numerous other products hold the same FDA-approved status—they would not have purchased the Products, would have paid significantly less for them, or would have purchased a competitor product. As such, Plaintiff and other consumers suffered economic injury.

## CLASS ACTION ALLEGATIONS

48. Plaintiff brings this class action pursuant to Fed. R. Civ. P 23 and all other applicable laws and rules, individually, and on behalf of all members of the following Classes:

**Nationwide Class**
All residents of the U.S. who purchased any of the Products in the U.S. within the applicable statute of limitations period ("Nationwide Class").

**California Class**
All residents of California who purchased any of the Products within the applicable statute of limitation period ("California Class").

**California Consumer Subclass**
All residents of California who purchased any of the Products for personal, family, or household purposes, within the applicable statute of limitations period ("California Consumer Subclass").

49. The Nationwide Class, California Class and California Consumer Subclass are referred to collectively as the "Classes."

50. Excluded from the Classes are the following individuals and/or entities: Defendants and their parents, subsidiaries, affiliates, officers and directors, current or former employees, and any entity in which Defendants have a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

51. Plaintiff reserves the right to modify or amend the definition of the proposed Classes and/or add subclasses before the Court determines whether class certification is appropriate.

52. Plaintiff is a member of all three Classes.

53. **Numerosity:** Members of each Class are so numerous and geographically dispersed that individual joinder of all Class members is impracticable. The precise number of Class members is unknown to Plaintiff but is likely to be ascertained by Defendants' records. At a minimum, there are likely thousands of Class members.

54. **Commonality:** There are questions of law and fact common to the proposed class(es). Common questions of law and fact include, without limitations:

a. whether Defendants' course of conduct alleged herein violates the statutes and other laws that are pled in this Complaint;

b. whether reasonable consumers would rely upon Defendants' "ONLY FDA APPROVED" representation and reasonably believe that Keranique is the sole FDA-approved topical solution for women's hair regrowth;

c. whether Defendants knew or should have known their representations were false or misleading;

d. whether certification of each Class is appropriate under Rule 23;

e. the amount and nature of the relief to be awarded to Plaintiff and the Classes, including whether Plaintiff and the Classes are entitled to punitive damages.

55. **Typicality:** Plaintiff's claims are typical of the other Class members because Plaintiff, as well as Class members, purchased one of the Products and relied on the "ONLY FDA APPROVED" representation on the Products prior to purchasing them. Plaintiff and the members of each Class paid for Defendants' Products and would not have purchased them (or would have paid substantially less for them) had they known that the Defendants' representations were untrue.

56. **Adequacy:** Plaintiff will fairly and adequately protect the interests of the proposed Classes as her interests do not conflict with the interests of the members of the proposed Classes she seeks to represent, and she has retained counsel competent and experienced in class action litigation. Thus, the interests of the members of the Classes will be fairly and adequately protected by Plaintiff and her counsel.

57. **Predominance:** Pursuant to Rule 23(b)(3), the common issues of law and fact identified in this Complaint predominate over any other questions affecting only individual members of the Classes. Class issues fully predominate over any

individual issue because no inquiry into individual conduct is necessary; all that is required is a narrow focus on Defendants' misconduct detailed at length in this Complaint.

58. **Superiority:** A class action is superior to all other available methods for the fair and efficient adjudication of this litigation because individual litigation of each claim is impractical. It would be unduly burdensome to have individual litigation of hundreds of thousands of individual claims in separate lawsuits, every one of which would present the issues presented in the Complaint/lawsuit. Further, because of the damages suffered by any individual Class member may be relatively modest in relation to the cost of litigation, the expense and burden of individual litigation make it difficult, if not impossible. Furthermore, many of the Class members may be unaware that claims exist against the Defendants.

## FIRST CLAIM FOR RELIEF
### Violation of California's Consumers Legal Remedies Act
### California Civil Code § 1750, *et seq*.
### (*For the Nationwide Class, or in the alternative, the California Consumer Subclass*)

59. Plaintiff repeats the allegations contained in paragraphs 1-58 above as if fully set forth herein.

60. Plaintiff brings this claim individually and on behalf of the members of the proposed Nationwide Class against Defendants pursuant to California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq.*

61. The Products are "good[s]" within the meaning of Cal. Civ. Code § 1761(a), and the purchases of the Products by Plaintiff and members of the Nationwide Class constitute "transactions" within the meaning of Cal. Civ. Code § 1761(e).

62. Cal. Civ. Code § 1770(a)(5) prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have. . . .'" By representing that the Products are "THE

ONLY FDA APPROVED TOPICAL SOLUTION FOR WOMEN'S HAIR REGROWTH," Defendants have represented and continue to represent that the Products possess a unique, exclusive FDA approval that they do not have. Therefore, Defendants have violated and continues to violate section 1770(a)(5) of the CLRA.

63. Cal. Civ. Code § 1770(a)(7) prohibits "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another." By representing that the Products are "THE ONLY FDA APPROVED TOPICAL SOLUTION FOR WOMEN'S HAIR REGROWTH," Defendants have represented and continue to represent that the Products possess a unique, exclusive FDA approval that they do not have. Therefore, Defendants have violated and continue to violate section 1770(a)(7) of the CLRA.

64. Cal. Civ. Code § 1770(a)(9) prohibits "[a]dvertising goods or services with intent not to sell them as advertised." By marketing and advertising the Products as the only FDA-approved solution for women's hair regrowth, and not delivering Products with unique FDA approval, Defendants have advertised the Products with characteristics they intended not to provide to consumers. As such, Defendants have violated and continue to violate section 1770(a)(9) of the CLRA.

65. At all relevant times, Defendants have known or reasonably should have known that the marketing and advertising of its Products with the "ONLY FDA APPROVED" representation is false and deceptive, and that Plaintiff and other members of the Nationwide Class would reasonably and justifiably rely on this representation when purchasing the Products. Nonetheless, Defendants deceptively advertise the Products as such in order to deceive consumers into believing the Products are uniquely FDA-approved.

66. Plaintiff and members of the Nationwide Class have justifiably relied on Defendants' misleading representation when purchasing the Products. Moreover, based on the materiality of Defendants' misleading and deceptive conduct, reliance may be presumed or inferred for Plaintiff and members of the Nationwide Class.

67. Plaintiff and members of the Nationwide Class have suffered and continue to suffer injuries caused by Defendants because they would have paid significantly less for the Products, or would not have purchased them at all, had they known that the Products are not uniquely FDA-approved and that numerous lower-priced alternatives share the same FDA-approved status.

68. Plaintiff mailed notice to Defendants of their CLRA violations pursuant to Cal. Civ. Code § 1782 on August 18, 2025. Defendants have not agreed to rectify the problems identified herein within 30 days of receipt. Thus Plaintiff seeks damages pursuant to Cal. Civ. Code § 1780 individually, and on behalf of the members of the Nationwide Class.

69. Pursuant to Cal. Civ. Code § 1780(d), a declaration of venue is attached to this Complaint.

## SECOND CLAIM FOR RELIEF
**Violation of California's False Advertising Law**
**California Business & Professions Code § 17500, *et seq***
**(*For the Nationwide Class, or in the alternative, the California Class)***

70. Plaintiff repeats the allegations contained in paragraphs 1-58 above as if fully set forth herein.

71. Plaintiff brings this claim individually and on behalf of the members of the proposed Nationwide Class against Defendants pursuant to California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500, *et seq*.

72. The FAL makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public . . . in any advertising device . . . or in any other manner or means whatever, including over the Internet, any statement, concerning . . . personal property or services professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500.

73. Defendants have represented and continue to represent to the public, including Plaintiff and members of the proposed Nationwide Class, through their deceptive labeling and advertising, that the Products are "THE ONLY FDA APPROVED TOPICAL SOLUTION FOR WOMEN'S HAIR REGROWTH," when that is not true. Because Defendants have disseminated false and misleading information regarding the Products, and Defendants know, knew, or should have known through the exercise of reasonable care that the representation was and continues to be false and misleading, Defendants have violated the FAL.

74. As a result of Defendants' false advertising, Defendants have and continue to unlawfully obtain money from Plaintiff and members of the Nationwide Class.

**THIRD CLAIM FOR RELIEF**
**Violation of California's Unfair Competition Law ("UCL"),**
**California Business & Professions Code § 17200, *et seq.***
**(*For the Nationwide Class, or in the alternative, the California Class*)**

75. Plaintiff repeats the allegations contained in paragraphs 1-58 above as if fully set forth herein.

76. Plaintiff brings this claim individually and on behalf of the members of the proposed Nationwide Class against Defendants pursuant to California Business & Professions Code § 17200.

77. The UCL, Cal. Bus. & Prof Code § 17200, provides, in pertinent part, that 'unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising[.]"

78. Under the UCL, a business act or practice is "unlawful" if it violates any established state or federal law. Defendants' false and misleading advertising of the Products was and continues to be "unlawful" because it violates the CLRA and the FAL, as well as the other statutes and laws referenced herein. As a result of Defendants' unlawful business acts and practices, Defendants have unlawfully obtained money from Plaintiff and members of the proposed Nationwide Class.

79. Under the UCL, a business act or practice is "unfair" if its conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous, as the benefits for committing such acts or practices are outweighed by the gravity of the harm to the alleged victims. Defendants' conduct was and continues to be of no benefit to purchasers of the Products, as it is misleading, unfair, unlawful, and is injurious to consumers who rely on the Products' labeling, marketing, and advertising. Therefore, Defendants' conduct was and continues to be "unfair." As a result of Defendants' unfair business acts and practices, Defendants have and continue to unfairly obtain money from Plaintiff and members of the proposed Nationwide Class.

80. Under the UCL, a business act or practice is "fraudulent" if it actually deceives or is likely to deceive members of the consuming public. Defendants' conduct here was and continues to be fraudulent because it has the effect of deceiving consumers into believing the Products are "THE ONLY FDA APPROVED TOPICAL SOLUTION FOR WOMEN'S HAIR REGROWTH," when in fact numerous other manufacturers hold FDA approval for identical minoxidil 2% topical solutions. Because Defendants have misled Plaintiff and members of the Nationwide Class, Defendants' conduct was "fraudulent." As a result of Defendants' fraudulent business acts and practices, Defendants have and continue to fraudulently obtain money from Plaintiff and members of the Nationwide Class.

## FOURTH CLAIM FOR RELIEF
### Breach of Express Warranty
### Cal. Com. Code § 2313
### (*For the California Class*)

81. Plaintiff repeats the allegations contained in paragraphs 1-58 above as if fully set forth herein.

82. Plaintiff brings this claim individually and on behalf of the members of the California Class against Defendants for breach of express warranty under Cal. Com. Code § 2313.

83. California's express warranty statutes provide that "(a) [a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise," and "(b) [a]ny description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description." Cal. Com. Code § 2313.

84. Defendants have expressly warranted on the Products' front label that the Products are "THE ONLY FDA APPROVED TOPICAL SOLUTION FOR WOMEN'S HAIR REGROWTH." However, as alleged herein, these express representations are false and misleading, as the Products are not the only FDA-approved topical solutions for women's hair regrowth.

85. Defendants' "only FDA approved" representations on the Products' front labels are: (a) affirmations of fact or promises made by Defendants to consumers that the Products are the only FDA-approved topical solutions for women's hair regrowth; (b) became part of the basis of the bargain to purchase the Products when Plaintiff and other consumers relied on the representations; and (c) created an express warranty that the Products would conform to the affirmations of fact or promises. In the alternative, the representations about the Products are descriptions of goods which were made as part of the basis of the bargain to purchase the Products, and which created an express warranty that the Products would conform to the product descriptions.

86. Plaintiff and members of the California Class reasonably and justifiably relied on the foregoing express warranties, believing the Products did in fact conform to those warranties and were the only FDA-approved topical solutions for women's hair regrowth.

87. Defendants have breached the express warranties made to Plaintiff and members of the California Class by failing to provide products that are the only FDA-

approved topical solutions for women's hair regrowth, as promised by the Products' front labels.

88. Plaintiff and members of the California Class paid a premium price for the Products but did not obtain the full value of the Products as represented. If Plaintiff and members of the California Class had known of the true nature of the Products, they would not have been willing to pay the premium price associated with them. As a result, Plaintiff and members of the California Class suffered injury and deserve to recover all damages afforded under the law.

89. On August 18, 2025, within a reasonable time of discovering the breach, Plaintiff notified Defendants of their breach of warranty by way of a notice letter outlining the foregoing allegation.

**FIFTH CLAIM FOR RELIEF**
**Breach of Implied Warranty**
**(*For the California Class*)**

90. Plaintiff repeats the allegations contained in paragraphs 1-58 above as if fully set forth herein.

91. Plaintiff brings this claim individually and on behalf of the members of the California Class against Defendants.

92. California's implied warranty of merchantability statute provides that "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." Cal. Com. Code § 2314(1).

93. California's implied warranty of merchantability statute also provides that "[g]oods to be merchantable must be at least such as . . . (f) conform to the promises or affirmations of fact made on the container or label if any." Cal. Com. Code § 2314(2)(f).

94. Defendants are merchants with respect to the sale of Products. Therefore, a warranty of merchantability is implied in every contract for sale of the Products to California consumers.

95. By advertising the Products with the representation "THE ONLY FDA APPROVED TOPICAL SOLUTION FOR WOMEN'S HAIR REGROWTH," Defendants made an implied promise on the label that the Products were the only FDA-approved topical solutions for women's hair regrowth. However, the Products have not "conformed to the promises . . . made on the container or label" because the Products are not the only FDA-approved topical solutions for women's hair regrowth. Plaintiff, as well as other California consumers, did not receive the goods as impliedly warranted by Defendants to be merchantable. Therefore, the Products are not merchantable under California law and Defendants have breached their implied warranty of merchantability in regard to the Products.

96. If Plaintiff and members of the California Class had known that the Products' "ONLY FDA APPROVED" representations were false and misleading, they would not have been willing to pay the premium price associated with them. Therefore, as a direct and/or indirect result of Defendants' breach, Plaintiff and members of the California Class have suffered injury and deserve to recover all damages afforded under the law.

97. On August 18, 2025, within a reasonable time of discovering the breach, Plaintiff notified Defendants of their breach of warranty by way of a notice letter outlining the foregoing allegation.

## SIXTH CLAIM FOR RELIEF
**Quasi Contract/Unjust Enrichment/Restitution**
**(*For the Nationwide Class, or in the alternative, the California Class*)**

98. Plaintiff repeats the allegations contained in paragraphs 1-58 above as if fully set forth herein.

99. Plaintiff brings this claim individually and on behalf of the Nationwide Class.

100. As alleged herein, Defendants have intentionally and recklessly made misleading representations to Plaintiff and members of the Classes to induce them to

purchase the Products at inflated prices. Defendants charge approximately $14.49 per ounce for Keranique, while identical FDA-approved minoxidil 2% topical solutions sell for as little as $4.97 per ounce—less than one-third of Keranique's price. Plaintiff and members of the Class have reasonably relied on the misleading "only FDA approved" representation and paid a substantial premium—often nearly triple the price of competing FDA-approved products—for Products falsely marketed as uniquely approved when they are not. Plaintiff and members of the proposed Class have therefore been induced by Defendants' misleading and deceptive representations about the Products, and paid more money to Defendants for the Products than they otherwise would and/or should have paid.

101. Plaintiff and members of the proposed Classes have conferred a benefit upon Defendants as Defendants have retained monies paid to it by Plaintiff and members of the proposed Classes, including the premium amounts paid based on the false exclusivity claim.

102. The monies received were obtained under circumstances that were at the expense of Plaintiff and members of the proposed Classes—i.e., Plaintiff and members of the proposed Classes paid premium prices based on a false representation of exclusivity and did not receive the full value of the benefit conferred upon Defendant. Therefore, it is inequitable and unjust for Defendants to retain the profit, benefit, or compensation conferred upon it.

103. As a direct and proximate result of Defendants' unjust enrichment, Plaintiff and members of the proposed Classes are entitled to restitution, disgorgement, and/or the imposition of a constructive trust upon all profits, benefits, and other compensation obtained by Defendants from its deceptive, misleading, and unlawful conduct as alleged herein.

///

///

///

## SEVENTH CLAIM FOR RELIEF
**Intentional Misrepresentation/Fraud**
**(*For the California Class*)**

104. Plaintiff repeats the allegations contained in paragraphs 1-58 above as if fully set forth herein.

105. Plaintiff brings this claim individually and on behalf of the members of the California Class against Defendants.

106. Defendants had a duty to disclose to Plaintiff and Class Members correct and non-misleading information as to the quality and characteristics of the Products because Defendants were in a superior position than Plaintiff and Class Members such that reliance by Plaintiff and Class Members was justified. Defendants possessed the skills and expertise to know the type of information that would influence a consumer's purchasing decision.

107. At all relevant times, Defendants intentionally misrepresented, omitted, and concealed from consumers material facts regarding the quality and characteristics of the Products, including representing that the Products are "THE ONLY FDA APPROVED TOPICAL SOLUTION FOR WOMEN'S HAIR REGROWTH." These representations were material and were uniformly made.

108. As described above, Defendants' representations were false and misleading, as the Products are not the only FDA-approved topical solutions for women's hair regrowth. Defendants made these misrepresentations with actual knowledge of their falsity and/or made them with fraudulent intent.

109. Defendants made such false and misleading statements with the intent to induce Plaintiff and Class Members to purchase the Products at a premium price, deprive Plaintiff and Class Members of property or otherwise causing injury, and thus, Defendants have committed fraud.

110. Defendants' deceptive or fraudulent intent is evidenced by motive and opportunity. Defendants knew that consumers value products that are uniquely FDA-

approved and that consumers would pay a premium for a product they believed to be uniquely FDA-approved. For that reason, Defendants labeled and advertised the Products with the "ONLY FDA APPROVED" representation to gain a competitive edge and to induce Plaintiff and Class Members to purchase the Products at a premium price. As manufacturers and distributors of hair regrowth products, Defendants possess intimate knowledge of the FDA approval process and the competitive landscape for minoxidil products. Defendants knew, or should have known through the exercise of reasonable diligence, that numerous other manufacturers held FDA approval for identical minoxidil 2% topical solutions for women. Despite this knowledge, Defendants intentionally chose to make the false exclusivity claim.

111. Plaintiff and the Class Members were unaware of the falsity in Defendants' misrepresentation and, as a result, justifiably relied on it when making the decision to purchase the Products.

112. As a proximate result of Defendants' intentional misrepresentations, Plaintiff and the Class were induced to purchase the Products at a premium.

113. Plaintiff and the Class Members would not have purchased the Products or paid as much for the Products if the true facts had been known.

114. As a result of their reliance, Plaintiff and Class Members were injured in an amount to be proven at trial, including, but not limited to, their lost benefit of the bargain and overpayment at the time of purchase.

115. Defendants' conduct was knowing, intentional, with malice, demonstrated a complete lack of care, and was in reckless disregard for the rights of Plaintiff and Class Members. Plaintiff and Class Members are therefore entitled to an award of punitive damages, as well as other damages.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the proposed Classes, respectfully prays for following relief:

A. Certification of this case as a class action on behalf of the proposed Classes defined above, appointment of Plaintiff as Class representative, and appointment of her counsel as Class Counsel;

B. An award of all economic, monetary, actual, consequential, and compensatory damages caused by Defendants' conduct;

C. An award of nominal, punitive, and statutory damages;

D. An award to Plaintiff and her counsel of reasonable expenses and attorneys' fees;

E. An award to Plaintiff and the proposed Classes of pre and post-judgment interest, to the extent allowable; and

F. For such further relief that the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff, individually, and on behalf of the proposed Classes, hereby demands a jury trial with respect to all issues triable of right by jury.

DATED: December 29, 2025

**TREEHOUSE LAW, LLP**

By: /s/ *Benjamin Heikali*

Benjamin Heikali (SBN 307466)
Ruhandy Glezakos (SBN 307473)
Joshua Nassir (SBN 318344)
Ammad Bajwa (SBN 358564)
3130 Wilshire Blvd., Suite 555
Santa Monica, CA 90403
Telephone: (310) 751-5948
bheikali@treehouselaw.com
rglezakos@treehouselaw.com
jnassir@treehouselaw.com
abajwa@treehouselaw.com

*Attorneys for Plaintiff and the Putative Classes*

**VENUE DECLARATION OF YOLANDA PITRE PURSUANT TO CAL. CIV. CODE 1780(d)**

I, Yolanda Pitre, hereby declare:

1. I am a Plaintiff in the action entitled *Pitre v. Scientific Hair Research, LLC, et al.*
2. I am a competent adult over eighteen years of age and I have personal knowledge of the facts set forth herein. If called as a witness, I could testify competently thereto.
3. I currently reside in San Mateo, California, located in San Mateo County.
4. I last purchased the Keranique Women's 2% Minoxidil Solution in or around early 2025, in this District.

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

Executed on 12/16/2025 in San Mateo, California

[signature]

Yolanda Pitre